## BLEN *v.* BEAR RIVER AND AUBURN WATER AND MINING COMPANY.

PLAINTIFF entered into a contract with defendants, by which the latter purchased of the former certain ditches for $14,500, payable $2,500 cash, and $12,000 as follows, to wit: the expenses of keeping said ditches in good order, of employing agents to attend to the same, being first deducted from the proceeds of the sale of water, the balance of the proceeds was to be applied to the liquidation of said $12,000, until the whole was paid, "and to hasten and make certain the timely and early payment of said sum of money, by the sales as aforesaid, said company promise to furnish from their ditch, to be used in the above named ditches, so much water, which, added to the water supplied to said ditches from their other sources, shall be sufficient to effect sales to the amount of $1,000 per month; and when said company shall fail to furnish water as aforesaid, the said company hereby obligate themselves to pay to said Blen interest at the rate of ten per cent. per annum, on the said monthly deficiency, until met by receipts from sales over and above the said $1,000 per month." *Held,* that this contract is not an agreement on the part of defendants to pay the balance over the $2,500 only from the proceeds of the ditches named therein; but that it is a guarantee on their part that the mode of payment prescribed, shall be effectual to pay the debt within a given time.

The company were bound, by the contract, to furnish and sell the stipulated quantity of water, and apply the proceeds monthly to the payment of plaintiff's claim, and failing to do this, were responsible in damages.

The last clause in the contract does not give defendants a right to refuse to supply this water, but simply provides a measure of damages for the breach of it.

Blen *v.* Bear River and Auburn Water and Mining Co.

APPEAL from the Eleventh District.

Action of damages for breach of the contract set forth in the opinion of the Court. The complaint avers in substance, that from the date of the contract, February 14th, 1856, to June 14th, 1857, the monthly deficiencies in the sales of water were from seven hundred dollars to nine hundred dollars; that defendants failed almost entirely to supply water to the ditches named in the contract; and hence, plaintiff sues for the gross amount of the monthly deficiencies up to the time necessary to equal the sum due him—about $11,600, with ten per cent. per annum interest on each month's deficiency as it occurred.

The answer denies the contract, and pretty much all the averments in the complaint, the general demurrer first put in by defendants having been overruled.

The Court below instructed the jury in effect that, by the contract, plaintiff was to be paid the $12,000 out of the net proceeds of the ditches mentioned therein; and that if they believed plaintiff had, at the commencement of this suit, received those proceeds, they must find for defendants; and further, that although by the contract, defendants agreed to supply water sufficient to make the net proceeds amount to $1,000 per month, yet if they failed to furnish such supply, they were only liable to pay interest at ten per cent. per annum on the deficiencies, until such deficiencies were paid from the net proceeds of the sales of water; and that defendants were not liable to pay either deficiencies or interest thereon in any way, except out of the net proceeds of such sales; and further, that any general verdict must be for defendants, because the complaint does not aver that plaintiff has not received the full amount of the net proceeds of the sales of water from the ditches.

Verdict for defendants. Plaintiff appeals.

*Tuttle & Hillyer*, for Appellant.

The plain meaning of the contract is, that defendants were bound to furnish sufficient water to the ditches named therein, to make the net proceeds of the sale of water amount to $1,000 per month, and failing to do so, were liable in damages. (Story on Contracts, secs. 631, 637.)

*E. B. Crocker*, for Respondents.

This is an alternative contract on the part of defendants—that is, they might furnish the water or not, at their option, and if they chose

not to supply it, then they were to pay interest. This is the penalty of their failure agreed to by the parties, and the Court has no right to make a new agreement for them.

A contract is to be construed according to the intentions of the promissor. (Chitty on Contracts, 70.) Where the contract is in the alternative, the party has the right of election. (11 J. R. 59; 8 N. H. 413; 1 Cal. 446; 2 Id. 115; Chitty on Contracts, 729, 624, *b* and *c*.)

*Halleck, Peachy & Billings and Gregory Yale,* also for Respondent, relied on the position that the contract was an alternative contract— either to furnish the water, *or* to pay interest on the amount of the deficiency " until met by receipts from sales over and above the said $1,000 per month." Plaintiff sues not for the interest, but for the entire sum of $12,000. This he cannot do, as defendants have their election to furnish the water, *or* pay interest. (Story on Cont., sec. 665.)

BALDWIN, J. delivered the opinion of the Court—COPE, J. concurring.

The main question in this case is as to the construction of a certain contract upon which the suit is brought. The contract is in these words: " The Bear River and Auburn Water and Mining Company, for and in consideration of the ditch known as the Tracy Ravine and Mississippi Bar ditch, by them purchased this day of Joshua Blen, and in consideration of the interest claimed and held by the said Blen, in the Beals' Bar ditch, which interest in said last named ditch the said Blen has this day assigned to said company as value received, promise to pay to said Blen fourteen thousand five hundred dollars, as follows: two thousand five hundred dollars in cash, and twelve thousand dollars in the manner following, to wit: first, the expenses of keeping said ditches in good working order, and the expenses of employing agents to attend to said ditches, are to be paid out of the proceeds of the sale of water from said ditches, the revenues and profits arising from the sales of water from said ditches over and above said charges are to be applied to the liquidation of the said sum of twelve thousand dollars, until the whole sum is paid, and to hasten and make certain the timely and early payment of said sum of money, by the sales as aforesaid, said company promise to furnish from their ditch, to be used in the above named ditches, so much water, which added to the water supplied to said ditches from their other sources, shall be sufficient to effect

sales to the amount of one thousand dollars per month, and when said company shall fail to furnish water as aforesaid, to the extent aforesaid, the said company hereby obligate themselves to pay to said Blen interest at the rate of ten per cent. per annum on the said monthly deficiency, until met by receipts from sales over and above the said one thousand dollars per month.

" Given this fourteenth day of February, 1856."

The District Court interpreted this contract to be an agreement, on the part of the defendants, to pay the balance beyond the twenty-five hundred dollars, only from the proceeds of the ditches mentioned in the instrument.    But we do not so construe it.

1. There appears a recital of a sale of a ditch, and the passing of the property over to the vendee without further contract by the vendor; then a gross consideration of fourteen thousand five hundred dollars for the purchase is recited ; then follows the provision for the payment ; twenty-five hundred dollars were to be paid in cash, twelve thousand dollars to be paid in a prescribed manner—*i. e.*, the expenses of the ditch are to be first paid—then the proceeds (less these expenses) of the sales of water from the ditches, to be applied to the debt until it is discharged.    But the contract does not stop here.    It continues : "And to hasten and make certain the timely and early payment of said sum of money, by the sales as aforesaid, the company promise to furnish from their ditch, to be used in the above named ditches, so much water, as with the other water (not supplied by the company, but belonging to the ditches sold) shall be sufficient to effect sales to the amount of one thousand dollars per month."    In other words, the agreement so far is, that the company, having made a provision for paying this debt in a prescribed mode, guarantee that that mode shall be effectual to pay the debt within a given time.    That this is a correct paraphrase of this part of the agreement is evident from the succeeding clause, which provides for interest on the monthly deficiency of sales of water from the ditch, if water is not supplied as agreed.    The company having the ditches bought from the plaintiff in possession, and the control of the water, it would be folly in the plaintiff to consent to receive his pay in water, or the proceeds of water, from defendant's own ditch, if it were at the option of the defendant to furnish the water or not, at his pleasure.    The agreement for payment, according to this view of the matter, would be an agreement to pay or not as the defendant chose.

The company were bound to furnish and sell this stipulated quantity

of water, and apply the proceeds monthly to the payment of the plaintiff's claim, and failing to do this, were responsible for the damages—and these, by the contract, are of easy computation.

The last clause of the contract does not give the defendants the right to refuse to supply this water; it does not dispense with the obligation, but only provides a measure of damages for the breach of it. The company, were bound to furnish this water as agreed, but if, from any cause, they were prevented in any one month from complying, in whole or part, then they were to pay interest at the rate of ten per cent. per annum on the deficiency of monthly supply, until paid by receipts of sales over and above the one thousand dollars per month, before provided as the periodical payment. The evident intent was to secure the one thousand dollars per month to be paid from sales, and this was guaranteed, but if the company, from accident or otherwise, could not furnish the monthly quota of water, interest was to be calculated on the omitted portion, and this over-due portion and interest were to be made up by the sales of other water than the one thousand dollars worth first provided for. It never could have been the intention of the contract to give to the company the right to postpone the payment of the interest or of the periodical quotas until it should be their pleasure to furnish the water to these ditches from their own ditch, and sell it and realize the proceeds; for this would be, as we said before, to give the company the option of paying or not, as they pleased; as the water to be furnished was to come from their own ditch, it would be folly, if such was their right, to turn the water into these other ditches, in order to pay the proceeds of the sale of water thus furnished to the plaintiff, when, by keeping it in their own ditch, they need not pay him at all.

This view disposes of the whole question involved; for there is nothing in the point as to the right of election, according to the view we have taken of the contract.

Judgment reversed, and cause remanded for a new trial.